Opinion issued January 13, 2005.

















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-00776-CR
   __________
 
TIMOTHY MCGINTY, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 278th District Court
Grimes County, Texas
Trial Court Cause No. 14,713
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Timothy McGinty, guilty of retaliation, a third degree
felony offense. The trial court sentenced appellant to 10 years confinement in prison. 
In four points of error, appellant contends that (1) the trial court erred in failing to
conduct a hearing relating to appellant’s competence, (2) the trial court erred in
denying appellant’s motion for a psychiatric examination, (3) the evidence was
factually insufficient to sustain his conviction, and (4) appellant’s punishment was
cruel and unusual punishment. We affirm. 
Background
          Officer D. Bell, a patrolman with the Navasota Police Department, testified
that, on the morning of October 3, 2001, he went to “Best G Auto” to buy a car. 
When he arrived, Bell saw appellant standing in front of the dealership with his pants
and underwear “pulled down mid drift” and his buttocks exposed. Bell informed
appellant of the laws prohibiting public lewdness, prompting appellant to pull up his
pants.
          While Bell was inside the office filling out paper work for his car, a salesman
for Best G Auto reported to Bell that, while the salesman was speaking with appellant
earlier that day, the salesman saw a razor blade inside appellant’s mouth. Shortly
after Bell was told about the razor blade, appellant approached Bell from behind and
told Bell that he wanted to speak with him. When Bell turned around to face
appellant, Bell saw appellant’s hand moving towards his mouth. Aware that appellant
had a razor blade hidden in his mouth, Bell drew his handgun and ordered appellant
to stop. Appellant complied with Bell’s order and Bell escorted appellant out of the
office in the car dealership. 
          After leaving the office, appellant removed the razor blade from his mouth and
gave it to Bell. Appellant told Bell that the hidden razor blade could have been used
to cut Bell at any time. Bell then asked appellant to leave Best G Auto and go home. 
Appellant said that he was staying in the nearby Cedar Creek Motel, and he wanted
Bell to escort him back to the motel because he was concerned that someone may be
hiding in his room. Bell agreed and, upon arriving at the motel and making a brief
inspection of the room, Bell assured appellant that no one was in the room.
          When Bell arrived at the police station later that day, he told the other officers
about the incident with the razor blade hidden in appellant’s mouth. Bell warned the
officers that, if they came in contact with appellant or if asked to respond to a call in
the area of Best G Auto or the Cedar Creek Motel, they should proceed with caution
due to appellant’s earlier behavior.
          Officer C. Wiesepape, a lieutenant with the Navasota Police Department,
testified that, later that same day, he and his partner, Deputy Chief L. Jackson, were
called to respond to a potential robbery at the Cedar Creek Motel. Officer J. Prior,
a Deputy Constable with Harris County Precinct Four, also responded to the call in
order to provide backup for Wiesepape and Jackson. The officers were given a
description of the robbery suspect and, upon arriving at the motel in their marked
patrol cars, they stopped appellant because he matched the description. Wiesepape
asked appellant for identification, but appellant claimed he did not have any
identification. Appellant told Wiesepape that his name was “Johnson.” Without
being prompted by any of the officers, appellant began emptying his pockets. 
Wiesepape noticed that a cigar appellant removed from his pocket appeared to
contain marihuana. Appellant tried to place the cigar back into his pocket, but
Wiesepape asked appellant to give him the cigar. Appellant complied, and
Wiesepape confirmed that it contained marihuana. Officer Prior detained appellant
and placed him in the patrol car. Appellant consented to a search of his motel room.
          While searching the room, the officers found codeine, which is a controlled
substance. Officers Bell, Wiesepape, and Prior all commented that the fact that
appellant was in possession of both marihuana and codeine was significant because
codeine is commonly mixed with marihuana to increase the effects of the marihuana. 
Officer Prior then placed appellant under arrest and took him to the Navasota police
station, where appellant was booked and placed in a holding cell.
          While detained in the holding cell, appellant’s behavior was erratic. 
Wiesepape observed appellant talking to himself, screaming, placing his face in the
toilet, and removing feces from the toilet and spreading it on the walls of the cell.
          Officer Prior testified that, while taking appellant to the police station,
appellant became “verbally abusive.” Appellant told Prior that appellant was a
“blood,” meaning that appellant was a member of a notorious street gang. Then
appellant called Prior a “pig” several times. During the booking process, appellant
told Prior that, when appellant was released from jail, he was going to find Prior alone
and kill him. 
          Officer Jackson testified that he has lived in Navasota his entire life and that
he has known appellant since high school. After learning that appellant had
threatened to kill Prior, Jackson went to appellant’s cell and asked him why he made
such remarks. Appellant told Jackson that he made the remarks merely because he
did not like Prior.
          Appellant testified that he did not remember threatening Prior. However,
appellant also stated that, earlier in the day, he had smoked marihuana enhanced with
both codeine and embalming fluid and, as a result, he did not have a clear memory of
the events that had taken place. Appellant stated that he did not mean any harm by
the statements he made to Prior and he was just “talking out the side of [his] neck.”
          Within days after his arrest and while still in the custody of the Navasota Police
Department, appellant vandalized his jail cell by removing stools bolted to the floor
and violently beating the jail cell with them. As a result, appellant was transferred
to the Austin State Hospital. Appellant escaped from the hospital and stole a car to
facilitate his getaway. Appellant later turned himself in to the police.
Competency
Hearing      
          In point of error one, appellant contends that, pursuant to Pate v. Robinson, 383
U.S. 375, 86 S. Ct. 836 (1966), and section 46.02 of the Texas Code of Criminal
Procedure,


 the trial court erred in failing to sua sponte conduct a hearing on the issue
of appellant’s competence to stand trial. In Pate, it was held that a trial court must
make inquiry into a criminal defendant’s mental competence once the issue is
sufficiently raised. See Pate, 383 U.S. at 385, 86 S. Ct. at 842. Conviction of an
accused person while he is legally incompetent violates due process. Id. at 378, 86
S. Ct. at 838.
          We must determine whether the trial court abused its discretion in failing to
conduct a competency hearing. See Moore v. State, 999 S.W.2d 385, 393 (Tex. Crim.
App. 1999). A defendant is presumed competent to stand trial and shall be found
competent to stand trial unless proved incompetent by a preponderance of the
evidence. Tex. Code Crim. Proc. Ann. art. 46.02 § 1(b) (Vernon Supp. 2004),
repealed by Acts 2003, 78th Leg., ch. 35, § 15, eff. Jan. 1, 2004. A person is
incompetent to stand trial if he does not have: (1) sufficient present ability to consult
with his attorney with a reasonable degree of rational understanding or (2) a rational
as well as factual understanding of the proceedings against him. Tex. Code Crim.
Proc. Ann. art. 46.02 § 1(a) (Vernon Supp. 2004), repealed by Acts 2003, 78th Leg.,
ch. 35, § 15, eff. Jan. 1, 2004. 
          If, during a defendant’s trial, evidence of the defendant’s incompetency is
brought to the attention of the trial court from any source, the trial court must conduct
a hearing out of the presence of the jury to determine whether there is evidence to
support a finding of incompetency to stand trial. Tex. Code Crim. Proc. Ann. art.
46.02 § 2(b) (Vernon Supp. 2004), repealed by Acts 2003, 78th Leg., ch. 35, § 15, eff.
Jan. 1, 2004. If evidence of the defendant’s incompetency is brought to the attention
of the trial court from any source, a trial court must conduct a non-jury hearing,
known as a “section 2” inquiry, on whether to hold a jury trial on the defendant’s
competency. McDaniel v. State, 98 S.W.3d 704, 710 (Tex. Crim. App. 2003). A
section 2 or “competency” inquiry is required only if the evidence brought to the
judge’s attention raises a bona-fide doubt in the judge’s mind about the defendant’s
competency to stand trial. Id. Evidence is usually sufficient to create a bona-fide
doubt if it shows recent severe mental illness, at least moderate retardation, or truly
bizarre acts by the defendant. Id. When such a bona-fide doubt exists, the court must
conduct the section 2 competency inquiry to determine whether there is “some
evidence” to support a finding of incompetency, and, if so, to commence a “section
4” competency hearing before a jury. Id.; see Tex. Code Crim. Proc. Ann. art.
46.02 § 4 (Vernon Supp. 2004), repealed by Acts 2003, 78th Leg., ch. 35, § 15, eff.
Jan. 1, 2004.
          Accordingly, (1) if a competency issue is raised by the defendant, any party,
or the court, and (2) if evidence of incompetency is brought to the attention of the
trial court by the defendant, any party, or the court and (3) if the evidence is of the
type to raise a bona-fide doubt in the judge’s mind regarding the defendant’s
competency to stand trial, then (4) the judge must conduct a section 2 competency
inquiry to determine if there is some evidence sufficient to support a finding of
incompetence, and, (5) if there is some evidence, the judge must impanel a jury for
a section 4 competency hearing. McDaniel, 98 S.W.3d at 710-11. The requirements
of each step must be fulfilled before the next step becomes applicable. Id. at 711. 
The naked assertion, “I am incompetent,” unsupported by any facts or evidence, is not
sufficient, by itself, to require either a competency inquiry under section 2 or a
competency hearing before a jury under section 4. Id.
          Evidence capable of creating a bona-fide doubt about a defendant’s
competency may come from the trial court’s own observations, known facts, evidence
presented, motions, affidavits, or any other claim or credible source. Brown v. State,
960 S.W.2d 772, 774 (Tex. App.—Dallas 1997, pet. ref’d). If the evidence presented
warrants a competency hearing and the trial court denies such a hearing, the
defendant is deprived of his constitutional right to a fair trial. Pate, 383 U.S. at 385,
86 S. Ct. at 842. “The conviction of an accused person while he is legally
incompetent violates due process.” Id. at 378, 86 S. Ct. at 838.
          At trial, appellant testified that he could only remember “bits and pieces” of the
day in question and the incidents that led to his arrest. Further, appellant stated that
he had no memory of making any threats towards Officer Prior. However, appellant
attributed his memory loss to the illegal drugs he had consumed that day. No
evidence from any source during the trial documented any clinical proof of
appellant’s incompetency prior to or during trial.


 Because nothing in the record
raised the issue of appellant’s inability to consult with his counsel or his inability to
understand the proceedings and the charges against him at any time during the trial,
we hold that the evidence was insufficient to create a bona-fide doubt as to
appellant’s competency.
          Appellant has failed to establish that the trial court abused its discretion by
failing to conduct a section 2 competency inquiry to determine whether there was
some evidence to support a finding of incompetence and by failing to impanel a jury
for a section 4 competency hearing. See McDaniel, 98 S.W.3d at 710-11. 
Accordingly, appellant has not established that his due process rights were violated.
          We hold that the trial court did not abuse its discretion by not conducting a
competency inquiry and competency hearing sua sponte.
          We overrule point of error one.
Psychiatric Examination
          In point of error two, appellant contends that the trial court erred in denying his
motion for psychiatric examination to determine appellant’s competence to stand trial. 
          The decision to appoint a disinterested expert to examine a defendant with
regard to his or her competency to stand trial is left to the sound discretion of the trial
court. Bigby v. State, 892 S.W.2d 864, 885 (Tex. Crim. App. 1994). We review the
trial court’s decision to deny a psychiatric examination for an abuse of discretion. Id. 
Such a determination should be made based upon a review of the totality of the facts. 
See id. at 885.
          As discussed in point of error one, appellant did not raise a bona-fide doubt as
to his competency. Therefore, the trial court did not abuse its discretion by refusing
to appoint an expert to conduct a psychiatric examination. 
          We overrule point of error two.
Sufficiency
          In point of error three, appellant argues that the evidence is factually
insufficient to sustain appellant’s conviction for retaliation.
          In a factual-sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004).
          In conducting a factual-sufficiency review, we must also employ appropriate
deference to the fact finder so that we do not substitute our judgment for that of the
fact finder. See Zuniga v. State, 144 S.W.3d 477, 482 (Tex. Crim. App. 2004). Our
evaluation should not intrude upon the fact finder’s role as the sole judge of the
weight and credibility given to any witness’s testimony. Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997). The weight to be given contradictory testimonial
evidence is within the sole province of the fact finder because it turns on an
evaluation of credibility and demeanor. Id. at 408. The fact finder is entitled to judge
the credibility of the witnesses and may choose to believe all, some, or none of the
testimony presented. Id. at 407.
          A person commits the offense of retaliation if he (1) intentionally or knowingly
(2) harms or threatens to harm another by an unlawful act (3) in retaliation for or on
account of the service or status of another (4) as a public servant. See Tex. Pen.
Code Ann. § 36.06(a)(1) (Vernon Supp. 2004-2005). Appellant’s entire sufficiency
challenge pertains to the element in the retaliation offense that required the State to
prove that the threat was made either “intentionally or knowingly.” 
          “A person acts intentionally with respect to the nature of his conduct or to a
result of his conduct when it is his conscious objective or desire to engage in the
conduct or cause the result.” See Tex. Pen. Code Ann. § 6.03(a) (Vernon 2003). A
person acts knowingly with respect to the nature of his conduct or to circumstances
surrounding his conduct when he is aware of the nature of his conduct or that the
circumstances exist. See Tex. Pen. Code Ann. § 6.03(b) (Vernon 2003).
          While appellant alleges that “uncontradicted testimony from four law
enforcement officers” at trial established that appellant was suffering from “severe
mental illness at the time of the alleged offense,” and, as such, appellant could not
form the requisite intent to commit the crime, no such testimony is in the record. 
Witnesses for the State testified that appellant appeared to be under the influence of
drugs, and appellant, in fact, admitted to having voluntarily consumed illegal drugs.
This does not, however, serve to negate his culpable mental state.



          We overrule point of error three.
Cruel and Unusual Punishment
          In point of error four, appellant contends that the trial court violated the Eighth
Amendment in sentencing him to 10 years in prison—the maximum prison term
allowed by law for the offense of retaliation. 
          For error to be preserved for appeal, the record must show that appellant made
a timely request, objection, or motion. See Tex. R. App. P. 33.1(a)(1). Constitutional
rights, including the right to be free from cruel and unusual punishment, may be
waived. See Rhoades v. State, 934 S.W.2d 113, 121 (Tex. Crim. App. 1996).
          When appellant’s sentence was announced, he did not object to the sentence
as violating his constitutional rights. Nor did appellant raise the argument in a
post-trial motion. Accordingly, appellant has not preserved this issue for appellate
review.
          We overrule point of error four.
Conclusion
          We affirm the judgment of the trial court.
 
                                                                        George C. Hanks, Jr.
                                                                        Justice
 
Panel consists of Justices Nuchia, Hanks, and Higley.
 
Do not publish. Tex. R. App. P. 47.2(b).